May it please the court. My name is Linda Bell. I'm an assistant federal public defender from the District of Nevada. I represent Lazaro Hernandez. I'd like to ask to reserve two minutes for rebuttal. Did you send a copy of your 28-J letter to opposing counsel? I did and I confirmed this morning that he had received both of them. Okay. This case involves the violation of Mr. Hernandez's equal protection rights when he was prosecuted by the State of Nevada. During his trial, the prosecutor excused a juror solely for the reason that she spoke Spanish. The action of the prosecutor violated clearly established federal law set forth in the United States cases of Batson v. Kentucky and Hernandez v. New York. Well, you know, see, that's your problem. Hernandez sets out two possibilities. It says that this might be or might not be a Batson violation when you look at merely ability to speak a foreign language. And our cases, Ninth Circuit cases, have tended to accept the might be analysis. But the courts of Nevada went down that road and they said, well, no, we see a Supreme Court case. The Supreme Court's case says might, might not be. We take the might not be. How can that possibly be contrary to Supreme Court precedent or inconsistent with it? When Hernandez itself leaves open the possibility that this is not a violation. Well, Hernandez provides that you cannot excuse jurors for ethnicity, Hispanic jurors. And it also supports the three-step analysis from Batson and Allitt's progeny, Batson and Perkett, where you have to look at a prima facie case with respect to the challenge, the race-neutral reason. And then the judge has to engage in the third-step analysis where the judge determines whether the opponent has, the opponent of the strike has proved purposeful racial discrimination. But you have to get past the first step. I mean, in this case, you haven't gotten past the first step. What you have is a strike. The prosecutor says, I'm striking a person because they speak the language. I can't tell that she's Hispanic. I don't know that she's Hispanic. And certainly we know that there are people in the world who speak Spanish who are not Hispanic, who are not native speakers. Right? That's true, Your Honor. In this case, however, the prosecutor proffered a race-neutral reason. And in Hernandez, the U.S. Supreme Court says that once the race-neutral reason is proffered, the step one analysis becomes moot. Well, isn't it race-neutral? I mean, if we have a translator and a Spanish speaker and they're going to be in conflict as the prosecutor sees it, isn't it reasonable to not have the juror? And not because they're of Hispanic heritage. It's because of the differential in language and language transactions. I mean, translation. Your Honor, that's what the court found in Hernandez. Well, and trial courts are finders of fact, aren't they? And we're not. The trial court in Hernandez found that the prosecutor had asked the juror, there were two jurors, and he asked them about their ability to follow the translations. And the jurors wouldn't make eye contact with them. They said they would try. Based on their answers, the prosecutor had reason to believe that they would not follow the translation. In this case, however, the prosecutor did not ask a single question. The prosecutor was given an opportunity to ask the juror additional questions after she came forward. You don't have to ask, you know, if you've got a male case, you don't have to ask the doctor, gee, are you willing to put aside your 15 years of medical training and believe the witnesses? You know, you could ask questions like that, but you know it's hard for people to do that. They are who they are. And if they speak the language, it's going to be hard for them to shut their ears to what the witness actually says and concentrate on the sometimes stilted translation of the interpreter. And, I mean, it's very hard. I mean, I don't know if you speak two languages, but, you know, when somebody's speaking the other language, it's very hard to sort of shut your eyes or shut your ears to what they're saying when you understand every word. Certainly, Your Honor, but the prosecutor didn't even ask a question of the juror. But you're not even – I'm sorry. I'm sorry. And he made the sweeping statement that – let me get that. What question could he have asked her? What could he have possibly asked her? If she would be willing to follow the translation. She may be perfectly willing. She may be perfectly willing. But, of course, if she says, no, I'm not willing. I'm going to do it on my own. Then you've got a removal for cause. But she may be perfectly willing to follow the translation, but he may doubt that she's able to. It's very difficult. It's confusing. Words are coming out of the witness's mouth and then the translator is speaking. And if you understand everything the witness says, that's the first thing you hear. And it's going to be difficult to switch over. But I don't think you've even gotten past batch number one at all. Because there's nothing here to show that this person was Hispanic. Actually, Mr. Baker, the defense lawyer, says whenever he makes his initial challenge, he says, she spoke Spanish, she was obviously a minority. And, again, that's on page 68 of the record. And the prosecutor says, I don't know if she's a minority. I just know she speaks Spanish. And what does the judge say? The judge says that he couldn't tell. However, the trial court on the trial court. Is there a finding that there's nothing obviously Hispanic about the person? So all you've got really identified is language ability. It could be somebody who had a Ph.D. in Spanish from a university. The prosecutor never disputes the defense lawyer saying that she was obviously a minority. She was the darkest person on the jury, except for the one black juror who was removed from the jury. And the judge says he can't tell. He never makes a finding that she isn't Hispanic. And he never calls her. More importantly, when this case was heard by the trial court on post-conviction, the court made a finding that defendant raised a Batson challenge, and the court accepted the prima facie showing and turned to the state for a race-neutral explanation of the challenge. And so that's the finding by the Nevada trial court on post-conviction. I'm sorry. Can you repeat that? On page 249 of the record, the state court makes a finding on post-conviction. Defendant raised a Batson challenge against the state's use of a peremptory challenge of Ms. Diodone. The court accepted the prima facie showing and turned to the state for a race-neutral explanation of the challenge. So by the state's own finding, they went on to step two, and step one is moved. Okay, so you think that locks the state in. So then what you've got is your explanation, and your position is that he couldn't rely on the theory of confusion, that the person wouldn't be able to shut out what you understood without a translator. That's your position? He never gave her the opportunity to even explain that. Why does he have to do that? I don't understand why he has to do that. What could she possibly explain? She says she understands the language, which puts her at a different position than every other juror. But then, Your Honor, in any case in which you had Hispanics who were part of the trial and there was an interpreter, then anybody who was Spanish-speaking would be removed from the jury, and that would cause a racial disparity in the jury, exactly what Patson was trying to prevent. I don't speak Spanish. Lots of people with Hispanic names born in this country, born in an immigrant household, when they say, No, we speak English here. It's very common with immigrants not to have children. I realize there are many who do the opposite, but there's a phenomenon among immigrants who say, No, we speak English. You're going to school, you're going to become an American. It's very common. In fact, statistically, a quarter of the people who consider themselves Hispanic don't speak Spanish. But certainly, by having this type of rule, you would be removing many more Hispanics. But there's no rule. This was a decision by one prosecutor in one case. This is not a rule of law that says you have to remove everybody who speaks Spanish from every trial with a Spanish translator. But that's what the prosecution... It's a judgment made by this prosecutor in this case. But that's what the prosecutor said precisely. We don't want any Spanish speakers on this jury. And that's what the United States... The next prosecutor might say, No, we think it's an advantage. This is exactly what the United States Supreme Court in Hernandez said could be a real problem as far as a race-neutral reason goes. Could be is your problem. Could be. And so that allows the possibility that it could not be. Under AEDPA, we have to determine whether the state court rules in a way that's contrary to your Supreme Court precedent. Clearly, it's nothing to the contrary. Or that's inconsistent, clearly inconsistent with the Supreme Court precedent. And when the Supreme Court precedent on point says could, it allows the possibility of could not. It allows two options. And Nevada took one path. It looks to me like Ninth Circuit is taking a different path. But why aren't both of those permissible under the general AEDPA standard? Well, unfortunately, in this case, we don't know what the trial court was thinking because the trial court never engaged in the Step 3 analysis. And this court said in McLean v. Prunty that then there's nothing to defer to because the trial court never reached the ultimate question. All the judge said was she looked white to me. And then he says I accept the race-neutral reason, but there's no weighing of whether there was purposeful discrimination. So there is nothing, in fact, for this court to defer to under AEDPA. Now, in McLean, this court said that that was contrary to Batson. However, I believe that under the Supreme Court case of Early v. Packer, which made it a little more restrictive, that it's perhaps just an unreasonable application of Batson. But either way, under AEDPA, there was no Mr. Hernandez can get relief because there was no third-step analysis of this. The trial court judge, who was in the best position to determine whether this was pretextual or not, didn't do anything but say that he found that the race-based or the race-neutral reason by the prosecutor was accepted. Okay. Do you want to save some of your time for rebuttal? Yes. I was going to save about two minutes. I see I have a few more minutes remaining, but I will just reserve it all. Thank you. Okay. Good morning. Rick Schulze, Senior Deputy Attorney General from Nevada. I think the court hit the core issue here, and the core issue is whether or not what the state courts did was objectively unreasonable under the AEDPA standard. If the Supreme Court has a might-or-might-not-be standard under Hernandez, it seems difficult to see how, when the state court system chooses one path, that somehow that's objectively unreasonable or in conflict with what the U.S. Supreme Court said. I mean, to be fair, it wasn't exactly a, when the Supreme Court says could, it is a suggestion, and I would think that that is probably more than 50%. They're not saying could, could not be. They're saying we think it might well be. In some circumstances. It might well be in some circumstances. And, you know, the case that was proposed by opposing counsel by Ms. Bell, I thought, you know, where, let's say, let's say there's a prosecutor's office that says, look, whenever we have a trial involving any witness, including the defendant who speaks for a translator, we will remove anybody from the jury who is a native speaker of the tongue. Okay, let's say that that was the policy, and sure enough you have a case involving a, what else, a Spanish-speaking defendant. A defendant doesn't, I'm sorry, a Spanish-speaking but non-English-speaking defendant, but you know how. Native speaker. Right. A native speaker. A native Spanish speaker. Well, a native Spanish speaker, but the point would be that if the defendant testifies, he'd have to testify as a translator. Okay. So, and of course we don't know. Defendants don't have to give notice whether they're going to testify or not. So all we know is he speaks on a test, and there's a possibility that he will testify. There's also a possibility there will be other witnesses that might testify, and they fill in the jury box, and sure enough there's a, Mr. Gonzalez there, and they ask him, sir, do you speak Spanish? And he says, oh, yes, I was born in Mexico. I came here 20 years ago, but I still speak Spanish. Bam, out, under the policy. I mean, depending on what part of Nevada you come from and depending on which part of California you come from, you would remove a lot of jurors that way. I agree. Let me tell you where I think the problem would be. I think if language were used as a pretext, and this kind of case would never make it past a panel like you three. If you're using it as a pretext to attack a native linguistic community, Spanish-speaking, Russian-speaking, whoever, whatever the immigrant group is, then it really starts to look like ethnic discrimination. But we don't know that that happened here because all we know is, and I don't know how to pronounce his name, Ziadon, all we know is she spoke Spanish. My dad speaks fluent Spanish. He's married. His fourth wife was born in Mexico. But we're German and Scottish. We have no Hispanic in us at all. And so my dad would be in the same kind of position here that he'd speak Spanish, and yet this is not the kind of case that I would be concerned with where language is used as a pretext to remove members of a linguistic community that also is an ethnic community. That, I think, would be problematic. But that's not what happened here. Do you take the trial judge's statement, I can't tell whether she is Hispanic, as a finding of fact that she does not have the ultimate appearance of being Hispanic or what? I think it's a finding of fact observing what was going on in the courtroom. I disagree with counsel when she says that the court didn't get to the third step in the analysis of Batson because I think when the court said, I think he's given us a race-neutral reason, I find there is his exact statement here. Prosecutors said what's different is somebody who's fluent in Spanish, there may be some problems. The court said she doesn't look Hispanic to me. All we know is she speaks Spanish. So it's a situation, as you said, where she may have a Ph.D. in Spanish, and she may be, I don't know, Italian. I don't know what her ethnicity is. But I think when the court came up with its conclusion, it was engaging. That was the product of the third Batson step in this case. But I'm not sure counsel did a good job in finding where we went past the first step. But, in fact, the state prosecutor offered a race-neutral reason. The difficulty here is if you have a translator going off one direction and you've got one or two jurors going off a completely different direction, there is an issue, and there's an issue that's nondiscriminatory. And the issue is that in some circumstances, you're going to have two different lines of testimony in the ears of different jurors because different jurors are hearing different issues. And ultimately, I don't know how the courts are going to deal with legitimate versus illegitimate use of linguistic strikes. There are many cases where it is legitimate, and there are cases where it's not. That's going to be a challenge. You would agree that discriminatory impact is not unconstitutional? I think discriminatory intent is the problem in Batson. I agree. I agree, but that wasn't my question. My question was discriminatory impact is not unconstitutional. In this circumstance. It might be terrible public policy to disenfranchise a large segment of your community if you're in a diversified community. I think so. I think it's a difficult issue, but the position I would take is that there are legitimate arguments for requiring jurors to hear one line of testimony. And this is a difficult area, and I think this is really going to require at some point more than what the Supreme This is not that case because there was no showing of discriminatory intent, but certainly we could all come up with a situation where it really is. If you've got a situation in a community where everyone who speaks Spanish, and I agree with Judge Kuczynski, it doesn't always happen. But if you've got a situation where everybody in an ethnic group speaks that language, at some point in time it starts to look like that's not really what's going on and it starts to look like it's a pretext. But I don't think that happened in this case. I think we understand this position. Is the Court interested in, this seems to be your primary interest, are you interested in any of the issues on procedural default? I think we're okay. Okay. Thank you very much. Thank you. This Court, recently in the Esparza-Gonzalez case, said that when a party articulates a race-neutral reason for a challenge and the trial court proceeds through the analysis, then the prima facie showing becomes moot. And once we get to the step two analysis, the prosecutor here said, well, she speaks Spanish. But then all the trial court did was say, I accept the race-neutral reason. There is none of the type of sensitive inquiry into whether this was a pretextual reason that is required under Batson and under Hernandez. What could you have done? I mean, he said, I understand the reason. I accept it. I believe counsel. I believe he's not removing her for who she is, but because he really thinks there's a problem that she might be listening to the witness rather than listening to the translator. Why can't the judge believe that? He certainly can believe it. However, he does not put any of that on the record. Defense counsel says when they give the reason that they don't want any Spanish-speaking people on the jury, which incidentally they didn't ask any of the jurors if they spoke Spanish. It's sort of odd if that's a concern of theirs. They don't ask this question. The defense counsel is the one who asked this question primarily. But defense counsel says after the proffered race-neutral reason, if they use the excuse just because she spoke Spanish, you're going to kick off every Latin in that jury, and that's clearly discriminatory. They have to say they wouldn't follow the interpreter. They didn't even question her. And the judge doesn't address that at all. He just says, well, the reason's okay, without going into a step three analysis whatsoever. She volunteered this, right? She said, oh, but, you know, I'm probably angling for a way out of the jury. No, I think what happened is she was passed for a cause. A number of the jurors were questioned, not every juror, but a few jurors were questioned on whether they spoke Spanish. Defense counsel asked most of the jurors if they knew anybody who was Latin and, you know, questions like that. And she wasn't asked the question, do you speak Spanish? So she approached the bailiff and explained that she spoke Spanish probably in response to that. Okay. Thank you. Thank you. Okay, Josiah, you will stand for a minute. We are adjourned.
judges: Beezer, Kozinski, Carney